**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | |
|---|---|
| **JENNIFER LICHTSINN,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | CAUSE NO.: 1:08-cv-307 |
| ) | |
| **MICHAEL J. ASTRUE,** ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

## OPINION AND ORDER

Plaintiff Jennifer Lichtsinn appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") approving in part and denying in part her application under the Social Security Act (the "Act") for Supplemental Security Income ("SSI").[1] (*See* Docket # 1.) For the following reasons, the Commissioner's decision will be AFFIRMED.

## I. PROCEDURAL HISTORY

Lichtsinn applied for SSI on October 29, 2003, alleging that she became disabled as of September 11, 2001.[2] (Tr. 17.) The Commissioner denied her application initially and upon reconsideration, and Lichtsinn requested an administrative hearing. (Tr. 38, 39.) Administrative Law Judge ("ALJ") Steven Neary conducted a hearing on December 13, 2006, at which Lichtsinn, who was represented by counsel; Krista Battell, Lichtsinn's case manager at Park Center mental health facility; and Christopher Young, a vocational expert ("VE") testified. (Tr.

---

[1] All parties have consented to the Magistrate Judge. *See* 28 U.S.C. § 636(c).

[2] Lichtsinn filed a separate application for SSI on October 22, 2002, also alleging an onset date of September 11, 2001. That application was denied initially and no appeal was taken. (Tr. 17.)

799-820.)

On April 16, 2007, the ALJ rendered a partially favorable decision to Lichtsinn. The ALJ concluded that until May 31, 2005, Lichtsinn was not disabled because her substance abuse was a contributing factor material to the determination of disability. (Tr. 17-18.) However, he found that as of June 1, 2005, Lichtsinn was disabled because her condition was disabling regardless of her substance abuse. (Tr. 17-18.) Lichtsinn was therefore awarded benefits for the period beginning June 1, 2005, but was not awarded back benefits for the nineteen month period between her application date of October 29, 2003 and May 31, 2005. The Appeals Council denied Lichtsinn's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 7-11.) Lichtsinn filed a complaint with this Court on December 18, 2008, seeking partial relief from the Commissioner's final decision. (Docket # 1.) On appeal, Lichtsinn argues that the ALJ erred in considering her past relevant work, in formulating the Residual Functional Capacity ("RFC"), and in not considering that her mental impairments may have contributed to her failure to follow her treatment regime.

## II. FACTUAL BACKGROUND[3]

### A. Background

Lichtsinn was thirty six years old at the time of the hearing. (Tr. 13, 97.) She did not complete high school, but later obtained a GED (Tr. 201) and has past work experience in manufacturing, food service, and retail. (Tr. 91-96.) Lichtsinn alleges that she became disabled due to a schizoaffective disorder and a substance abuse disorder.[4] (Br. 2.)

---

[3] In the interest of brevity, this Opinion recounts only the portions of the 820-page administrative record necessary to the decision.

[4] "The essential feature of a Schizoaffective Disorder is an uninterrupted period of illness during which, at sometime, there is a Major Depressive Manic or mixed Episode concurrent with symptoms that meet Criterion A for Schizophrenia. . . . In addition, during the same period of illness, there have been delusions or hallucinations for at least two weeks in the absence of prominent mood symptoms. (Criterion B.) Finally, the mood symptoms are

### B. Summary of Relevant Medical Evidence

Lichtsinn was examined by Dr. Herbert Trier, a psychiatrist, on March 4, 2002, on court referral to determine if she was competent to stand trial on two recent DUI arrests. (Tr. 194.) Dr. Trier noted that she might be suffering from post-partum depression as a result of giving birth eight months previously. (Tr. 194.) Dr. Trier reviewed her records and medical history, which included several visits to mental health facilities and psychological evaluations. (Tr. 194-95.) Dr. Trier noted that Lichtsinn was fairly coherent at the time he saw her, but found that she had "an underlying lack of ability to organize her thoughts clearly." (Tr. 195.) He found her to be a poor historian and diagnosed her with drug induced psychosis (alcohol/methamphetamine); probable underlying bipolar disorder (mixed type); alcohol dependence; and methamphetamine dependence. (Tr. 196.) Dr. Trier found that while she was clearly psychotic at the time of her offense, this was due to her drug abuse and her current prescriptions of Risperdal and Depakote were effective in keeping her condition in remission. (Tr. 196.) He ultimately concluded that she was competent to stand trial. (Tr. 196.)

On April 2, 2002, clinical psychologist Dr. Stephen Ross further examined Lichtsinn to determine whether she was competent to stand trial. (Tr. 198.) Dr. Ross had previously examined Lichtsinn on February 28, 2002, and noted then that she had shown inappropriate behavior and an inability to focus. (Tr. 200.) She had not provided reliable information during the previous visit—claiming to have been born in Sicily or Tibet—and Dr. Ross noted that she showed a pattern of delusions and drug induced psychosis. (Tr. 203-4.) During the April 2002 visit, Dr. Ross found Lichtsinn to be more sedate and able to focus, but still found that she

---

present for a substantial portion of the total duration of the illness. (Criterion C.) The symptoms must not be due to the direct physiological effects of a substance (e.g., cocaine) or a general medical condition." (Br. 2 (citing DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 298-323 (4th ed. 2000)).)

exhibited poor attention and concentration. (Tr. 202-3.) He concluded that although she was likely mildly incompetent at the time of her offense, she was fit to stand trial if it were delayed and she remained on her medication while incarcerated. (Tr. 206.)

Lichtsinn re-entered treatment at Park Center mental health facility on June 7, 2002 and was assessed by psychologist Nimal Fernando. (Tr. 243.) Lichtsinn had been drinking heavily following her release from prison in May 2002 but was later residing at Hope House, a substance abuse treatment facility for homeless women. (Tr. 243, 246.) Lichtsinn was diagnosed with alcohol dependence and alcohol induced mood disorder and assigned a Global Assessment of Functioning ("GAF") Score of 55.[5] (Tr. 136.) She claimed to have had a breakdown following the September 11, 2001, World Trade Center attacks. (Tr. 241-42.) Psychiatrist Dr. Don Marshall diagnosed alcohol dependence, in partial remission and bipolar disorder, most recent episode mixed and assigned a GAF Score of 68. (Tr. 242.) Lichtsinn left the Hope House treatment facility on November 21, 2002, to purchase narcotics and, as a result, was eventually sent back to prison. (Tr. 232.)

Lichtsinn was released from prison to a halfway house in January 2004. Dr. Kenneth Bundza performed a consultative examination of Lichtsinn on January 20, 2004. (Tr. 334-35.) He found that she demonstrated adequate communication skills, understood the examination questions, and was slightly anxious, but that her mood was otherwise unremarkable. (Tr. 335.) Dr. Bundza diagnosed major depressive disorder, recurrent, severe with psychotic features; alcohol dependence, in sustained, full remission; and delusional disorder and assigned a GAF

---

[5] A GAF score measures a clinician's judgment of the individual's overall level of psychological, social, and occupational functioning. *See* Diagnostic & Statistical Manual of Mental Disorders - Text Revision 32 (4th ed. 2000). The higher the GAF score, the better the individual's psychological, social, and occupational functioning. A GAF Score of 61 to 70 reflects mild symptoms or some difficulty in social, occupational, or school functioning. A GAF Score of 51 to 60 reflects moderate symptoms or moderate difficulty in social, occupational, or school functioning.

Score of 60. (Tr. 337.)

On February 12, 2004, Lichtsinn was examined by state agency psychologist Dr. F. Kladder. (Tr. 338.) Dr. Kladder assessed Lichtsinn as having mild limitations in her daily activities, social functioning, and concentration. (Tr. 348.) He assigned a GAF Score of 60 and noted that she was cooperative at her examination, communicated adequately, presented no delirious thoughts, and was socially appropriate. (Tr. 350.) Dr. Kladder also conducted a mental functional capacity assessment. (Tr. 352.) He noted that she was moderately limited in her ability to understand, remember, and carry out detailed instructions; maintain attention or concentration for extended periods; or set realistic goals or make plans independently of others. (Tr. 352-53.) He did not find Lichtsinn to be significantly limited in her ability to perform activities within a schedule, maintain regular attendance, or be punctual; sustain an ordinary routine without special supervision; or complete a normal workday without interruptions from psychological symptoms. (Tr. 352-53.)

Lichtsinn was seen on April 30, 2004, by Dr. Marshall, who noted that she had stopped taking her medications one week earlier and was becoming increasingly manic. (Tr. 403.) He assigned a GAF Score of 35[6] after diagnosing bipolar disorder, most recent episode manic, and alcohol dependence. (Tr. 403.)

On May 12, 2004, Dr. Sherwin Kepes performed a consultative examination on Lichtsinn. (Tr. 368.) She reported that she was frequently consuming large amounts of alcohol and Dr. Kepes noted that she made several delusional statements. (Tr. 368-69.) Dr. Kepes took note of her alcohol dependence in his report and found that she had regressed since her previous evaluation. (Tr. 371.) He diagnosed schizophrenia, paranoid, and assessed a GAF Score of 35.

---

[6] A GAF Score of 31 to 40 indicates some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood.

(Tr. 371.)

On June 4, 2004, Lichtsinn was evaluated by state agency psychologist Dr. J. Evans. (Tr. 372.) He found that she was moderately restricted in her daily living activities, but had marked limitations in social functioning and maintaining concentration, persistence, and pace. (Tr. 382.) Dr. Evans noted that she was still using alcohol, which he associated with her lower functioning, and he found that her substance abuse was material to her case. (Tr. 384.)

Lichtsinn's medical records indicate that by August 17, 2004, she was not compliant with her treatment. (Tr. 391.) By November 21, 2004, she was still noncompliant with treatment, smoking marijuana, and experiencing delusions. (Tr. 409-10.)

Lichtsinn was admitted to Parkview Behavioral Health on November 18, 2004. (Tr. 414.) She was evaluated by Dr. Larry Lambertson, who noted that she was paranoid and delusional. (Tr. 424.) Lichtsinn reported that she had not eaten or slept in several days and that she had been smoking large amounts of methamphetamine. (Tr. 424.) Lichtsinn's family indicated that she had been addicted to crack for twelve years and was an alcoholic. (Tr. 418.) On November 19, 2004, Dr. Lambertson diagnosed polysubstance abuse and substance induced psychosis and assigned Lichtsinn a GAF Score of 25.[7] (Tr. 419.)

Lichtsinn was hospitalized again at Parkview from December 30, 2004, to January 3, 2005. (Tr. 432-435.) A drug test for marijuana was positive. Dr. Marshall continued her treatment with Prolixin Decanoate and started her on Risperdal Consta. (Tr. 433.) Dr. Lambertson noted that it was uncertain if Lichtsinn was suffering from an underlying axis I disorder as opposed to an outside substance abuse disorder, but for the time being she would be treated for bipolar disorder, mixed. (Tr. 434.) She was assigned a GAF Score of 39 on admission

---

[7] A GAF Score of 21 to 30 indicates that behavior is considerably influenced by delusions or hallucinations or there is a serious impairment in communication or judgment or an inability to function in almost all areas.

and a score of 50 upon discharge. (Tr. 433.)

## C. Lichtsinn's Hearing Testimony

On December 13, 2006, Lichtsinn appeared with counsel and testified before ALJ Steven Neary. (Tr. 799-820.) Lichtsinn began her testimony by recounting her past work. (Tr. 802.) She testified that the longest she had ever worked was at Fort Wayne Pools for nine months, where she built liners for swimming pools. (Tr. 802.) The ALJ then questioned her about her substance abuse and its impact on her functioning and ability to work. Lichtsinn testified that she was currently receiving inpatient care at Transitional Care Services. (Tr. 803.) She had previously been participating in an outpatient program that consisted of classes and counseling sessions. (Tr. 806-7.)

Lichtsinn testified that she had been tested for drug use three times while in her treatment programs and tested negative each time. (Tr. 807.) She stated that her symptoms continued to bother her despite the fact that she was no longer drinking or using drugs. (Tr. 807.) She testified that she had trouble concentrating and that she suffered from depression. (Tr. 807-9.) She also claimed that she suffered from delusions, such as believing that she was adopted after her biological father was killed. (Tr. 809-10.)

Lichtsinn also testified about her physical symptoms and possible work limitations. (Tr. 803-6.) She testified that she did not have any problems with her hands, eyesight, or hearing, but that she could likely only lift fifteen to twenty pounds. (Tr. 805.) Lichtsinn stated that she could likely walk or stand for only thirty minutes because of a curvature in her back. (Tr. 804-5.) She testified that other than her group therapy, she was not engaged in any daily activities. (Tr. 805.)

Krista Battell, Lichtsinn's case manager at Park Center mental health facility, then testified. (Tr. 812-16.) She testified that she had daily contact with Lichtsinn while she was

participating in the center's programs. Battell verified that Lichtsinn tested negative for drug use and testified that she believed Lichtsinn had been drug and alcohol free since beginning this last round of treatment. (Tr. 813-14.) She testified that when Lichtsinn first began her treatment she was delusional and suffered from mood swings. (Tr. 814.) Battell testified that after Lichtsinn began the inpatient program, she no longer had daily contact with her, but that she believed that her symptoms were still present. (Tr. 815-16.)

Finally, Christopher Young, the VE, testified about what types of work Lichtsinn may be able to carry out. (Tr. 817-19.) The ALJ asked the VE to consider a thirty-five year old individual with a high school education who was limited to work that did not require the performance of more than simple, repetitive tasks. (Tr. 817-18.) The VE testified that Lichtsinn's past relevant work as an unskilled laborer at Fort Wayne Pools would fall within these limitations. (Tr. 818.) The VE next testified that he did not believe that a similar individual with limitations such as those described by Lichtsinn during her testimony—short term memory loss, delusions, depression, and a severe inability to concentrate—would be able to perform any work at any exertional level. (Tr. 818-19.)

### III. STANDARD OF REVIEW

Section 405(g) of the Act grants this Court "the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted). The decision will be reversed only if it is not supported by

substantial evidence or if the ALJ applied an erroneous legal standard. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

To determine if substantial evidence exists, the Court reviews the entire administrative record but does not re-weigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for the Commissioner's. *Id.* Rather, if the findings of the Commissioner are supported by substantial evidence, they are conclusive. *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003). Nonetheless, "substantial evidence" review should not be a simple rubber-stamp of the Commissioner's decision. *Clifford*, 227 F.3d at 869.

## IV. ANALYSIS

### A. The Law

Under the Act, a claimant is entitled to SSI if she establishes an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to . . . last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring consideration of the following issues, in sequence: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the Commissioner, *see* 20 C.F.R. § 404, Subpt. P, App. 1; (4) whether the claimant is unable to perform her past work; and (5) whether the claimant is incapable of performing work in the national economy. *See* 20 C.F.R. §

416.920; *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). Before performing steps four and five, the ALJ must determine the claimant's Residual Functional Capacity ("RFC")—what tasks the claimant can do despite her limitations. 20 C.F.R §§ 416.920(e), 416.945(a). The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of. 20 C.F.R. § 416.920(e).

An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001). A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled. *Id*. The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Clifford*, 227 F.3d at 868.

However, a claimant must be found to be not disabled if her drug or alcohol abuse is a "contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 1382(a)(1)(J); 20 C.F.R. § 416.935; *Williams v. Astrue*, No. 1:06-cv-1444, 2007 WL 2362978, at *5 (S.D. Ind. Aug 13, 2007). In such cases, the ALJ first makes his disability determination under the five step process. 20 C.F.R. § 416.935(b); *Sparks v. Astrue*, No. 3:08-cv-210, 2009 WL 2914106, at *6 (N.D. Ind. Sep. 3, 2009). If the ALJ finds that the claimant is disabled, he must next decide which of the claimant's limitations would remain absent the substance abuse. 20 C.F.R. § 416.935(b). The ALJ must then determine which, if any, of the remaining limitations would be disabling on their own. *Id*.; *Kangail v. Barnhart*, 454 F.3d 627, 628 (7th Cir. 2006) ("When an applicant for disability benefits has both a potentially disabling illness and is a substance abuser, the issue for the [ALJ] is whether, were the applicant not a substance abuser, she would still be disabled.").

## B. The ALJ's Decision

On April 16, 2007, the ALJ rendered a partially favorable decision. He found at step one of the five-step analysis that Lichtsinn had not engaged in substantial gainful activity since October 22, 2002, her prior application date. (Tr. 19.) At step two, he determined that Lichtsinn was suffering from the severe impairments of schizophrenia, paranoid type; affective disorder; and a substance abuse disorder. (Tr. 19-20.) At step three, he determined that prior to June 1, 2005, Lichtsinn's impairments were severe enough to meet a disability listing, but that her substance abuse was a contributing factor material to the finding of disability. (Tr. 20.) As such, he found that Lichtsinn was not disabled prior to June 1, 2005. The ALJ then found that beginning on June 1, 2005, Lichtsinn's impairments met the disability listings and she was disabled regardless of the effects of her substance abuse. (Tr. 20.) Before proceeding to step four, the ALJ determined that Lichtsinn had the following RFC:

> If the substance abuse were stopped prior to June 1, 2005, the claimant would continue to have a moderate impairment in her ability to concentrate such that she would be precluded from performing multi-step tasks. . .. Results of a mental status examination performed during a State Agency psychological evaluation on January 20, 2004, when the claimant was sober and compliant with medications, also reflected a finding that when abstinent and compliant with substance abuse [treatment] the claimant experienced no more than a moderate limitation in her ability to maintain concentration, persistence, and pace consistent with unskilled simple, repetitive tasks.
>
> . . . .
>
> If substance abuse was stopped prior to June 1, 2005, and the claimant remained compliant with medication and treatment she would have retained the residual functional capacity to perform unskilled simple, repetitive tasks.

(Tr. 21-22.)

Based on this RFC and the VE's testimony, the ALJ concluded at step four that if she had stopped her substance abuse prior to June 1, 2005, Lichtsinn would have been able to return to

her past relevant work as a manufacturing helper at a swimming pool factory. (Tr. 33.) Because the ALJ found at step four that Lichtsinn could return to her past relevant work, he did not proceed to step five of the analysis. The ALJ ultimately concluded that prior to June 1, 2005, Lichtsinn's substance abuse was a contributing factor material to the finding of disability and she was not disabled before that date. (Tr. 34.) The ALJ also found, however, that beginning on June 1, 2005, Lichtsinn was disabled regardless of the impact of her substance abuse. She was therefore granted benefits for the period beginning June 1, 2005, but not for any time before that date. (Tr. 34.)

*C. The ALJ Appropriately Considered Lichtsinn's Past Relevant Work.*

Lichtsinn first argues that the ALJ erred in considering her past relevant work. The ALJ found that she was not disabled prior to June 1, 2005, because she could have returned to her past relevant work as a manufacturing helper at a pool factory. (Tr. 33.) Lichtsinn claims that this job should not have been considered because it does not meet the recency requirement of past relevant work. The claimant's arguments are unpersuasive and do not warrant a remand of the ALJ's decision.

Past relevant work is defined in the regulations as:

> [The] skills and abilities you have acquired through work you have done which show the type of work you may be expected to do. We consider that your work experience applies when it was done within the last 15 years, lasted long enough for you to learn to do it, and was substantial gainful activity. We do not *usually* consider that work you did 15 years or more before the time we are deciding whether you are disabled (or when the disability insured status requirement was last met, if earlier) applies. A gradual change occurs in most jobs so that after 15 years it is no longer realistic to expect that skills and abilities acquired in a job done then continue to apply. The 15–year *guide* is intended to insure that remote work experience is not currently applied.

20 C.F.R. § 404.1565(a) (emphasis added).

Additionally, SSR 82-62 provides that work performed fifteen years prior to the time of

adjudication of the claim "is *ordinarily* not considered relevant." (Emphasis added.) Furthermore, "[w]hile the regulations provide that a claimant/beneficiary's work experience is usually relevant when the work 'was done within the last 15 years,' in some cases worked performed prior to the 15-year period may be considered as relevant when a continuity of skills, knowledge, and processes can be established between such work and the individual's more recent occupations." SSR 82-62.

In this case, the ALJ found that Lichtsinn could return to her past relevant work at Fort Wayne Pools, where she worked in 1991 and made $7431.88. (Tr. 33, 93, 818.) Lichtsinn claims that this was reversible legal error, because her job at Fort Wayne Pools was performed in 1991, more than fifteen years prior to the April 16, 2007, date of adjudication.

Despite Lichtsinn's best attempts to argue otherwise, the fifteen year guideline of 20 C.F.R. § 416.965 and SSR 82-62 is just that—a guideline. *Smith v. Sec. of Health & Human Services,* 893 F.2d 106, 109 (6th Cir. 1989) ("By the very terms of this regulation, fifteen years is not a bright line rule but a 'guide' intended to help the Secretary avoid concluding that a claimant who has worked in a job requiring marketable skills retains marketable skills after the workplace changed in its requirements."). Work performed outside of the fifteen year period is not automatically disqualified from consideration. Rather, the guideline is intended to prevent past work that is so remote that it may no longer have transferable skills from being considered. *Barnes v. Sullivan*, 932 F.2d 1356, 1359 (11th Cir. 1991) ("The fifteen-year limitation does not prohibit considering work outside that period, but merely creates a presumption of inapplicability of skills and abilities acquired in work performed outside the 15-year period."). Indeed, SSR 82-62 specifically authorizes the ALJ to consider work beyond the fifteen year guideline when "a continuity of skills, knowledge, and processes can be established between

such work and the individual's more recent occupations."

Here, the ALJ did just that. He found in his opinion that "[the past work at Fort Wayne Pools] was unskilled and was performed consistent with the claimant's limitation to simple, repetitive tasks." (Tr. 33.) The fifteen year guideline is intended to prevent an ALJ from finding that a claimant could return to past work when the skills needed for that work have changed. Here, however, Lichtsinn's job was performed at the unskilled level. "According to 20 C.F.R. § 416.968(a), a person does not gain work skills by doing unskilled work. Thus, since [Lichtsinn] cannot be deemed to have gained any work skills by [her job at Fort Wayne Pools], the rationale behind the 15-year requirement does not apply." *Shelton v. Sullivan*, No. 90 c 897, 1990 WL 251770, at *2 (N.D. Ill. Dec. 17, 1990). As such, the ALJ's opinion is based on substantial evidence and it will not be overruled. *Schmidt*, 395 F.3d at 744; *Clifford*, 227 F.3d at 869.

   *D. The RFC Reflects the ALJ's Findings on the Severity of Lichtsinn's Mental Condition.*

Lichtsinn next asserts that the ALJ erred when formulating her RFC. In a one paragraph argument, she claims that the ALJ's RFC does not reflect his findings on the severity of her mental condition. (Br. 20.) Lichtsinn's arguments are again unpersuasive and will not upset the ALJ's decision.

The RFC is a determination of the tasks a claimant can do despite her limitations. *See* SSR 82-62. While the RFC can be expressed in terms of exertional categories such as "light", medium", or "heavy", the ALJ must first make a more detailed function-by-function assessment of the claimant's current physical and mental abilities. SSR 96-8p. The RFC assessment "is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant non-medical evidence, such as observations [by] a lay witness of an individual's apparent symptomology, an individual's own statement of what he or she is able or unable to do,

and many other factors that could help the adjudicator determine the most reasonable findings in light of all the evidence." SSR 96-5p; *see* 20 C.F.R. § 416.945. In doing so, an ALJ must consider the combined effect of a claimant's severe and non-severe impairments when assigning an RFC. *See* 20 C.F.R. § 416.923; *Gentle v. Barnhart*, 430 F.3d 865, 868 (7th Cir. 2005); *Barrett v. Barnhart*, 355 F.3d 1065, 1068 (7th Cir. 2004); *Clifford*, 227 F.3d at 873 (7th Cir. 2000); *Green v. Apfel*, 204 F.3d 780, 782 (7th Cir. 2000).

In determining the severity of a claimant's mental impairment, the ALJ must address the claimant's degree of functional limitation in four "broad functional areas": activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. § 416.920a; *see, e.g.*, *Jones v. Massanari*, No. 01-C-0024-C, 2001 WL 34382025, at *13 (W.D. Wis. Oct. 18, 2001). The Seventh Circuit Court of Appeals has stated that the ALJ must then "incorporate" these limitations into his RFC determination. *Kasarsky v. Barnhart*, 335 F.3d 539, 543-44 (7th Cir. 2003) (holding that the ALJ erred when his RFC did not "take into account" his finding at step two that the claimant had deficiencies in concentration, persistence, or pace); *see also Stewart v. Astrue*, 561 F.3d 679, 684-85 (7th Cir. 2009).

Here, the ALJ found that Lichtsinn "experienced no more than a moderate limitation in her ability to maintain concentration, persistence, and pace. . .." (Tr. 21-22.) Yet, the RFC did not expressly incorporate these findings, instead limiting Lichtsinn to "unskilled simple, repetitive tasks." (Tr. 21-22; *see also* Tr. 352.) The Commissioner argues that the ALJ's limitation adequately accommodates Lichtsinn's mental health deficits. Lichtsinn disagrees and puts forth a fairly undeveloped argument that, *as a matter of law*, an ALJ may never account for concentration, persistence, or pace by restricting the inquiry to simple, routine tasks that do not require constant interactions with coworkers or the general public.

"[A]n ALJ is free to formulate his mental residual functional capacity assessment in terms such as 'able to perform simple, routine, repetitive work' so long as the record adequately supports that conclusion." *O'Connor-Spinner v. Astrue*, No. 4:06-CV-0171-DFH-WGH, 2007 WL 4556741, at *7 (S.D. Ind. Dec. 20, 2007) (quoting *Kusilek v. Barnhart*, No. 04-C-310-C, 2005 WL 56716, at *4 (W.D. Wis. Mar. 2, 2005) (internal quotation marks omitted)). That is, courts have held that when a medical source of record translates his findings into a particular RFC assessment, the ALJ may reasonably rely on that opinion in formulating a hypothetical question for the VE. *Id.*; *see, e.g.*, *Johansen v. Barnhart*, 314 F.3d 283, 289 (7th Cir. 2002) (concluding that the ALJ's limitation to low-stress, repetitive work adequately incorporated the claimant's moderate mental limitations because the consulting physician had essentially "translated [his] findings into a specific RFC assessment, concluding that [the claimant] could still perform low-stress, repetitive work."); *Howard v. Massanari*, 255 F.3d 577, 581-82 (8th Cir. 2001) (concluding that the ALJ adequately captured the claimant's deficiencies in concentration, persistence, or pace in his RFC that limited the claimant to simple, repetitive tasks, in part because the state agency psychologist concluded in his functional capacity assessment that the claimant could sustain sufficient concentration and attention to perform simple, repetitive, and routine activity); *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001) (finding that the ALJ's limitation of plaintiff to work that is "routine and low stress" as recommended by one medical source of record adequately accounted for the fact that plaintiff often suffered from deficiencies in concentration, persistence, or pace).

Here, the ALJ found that Lichtsinn had no more than moderate limitations in her ability to maintain concentration, persistence, and pace. (Tr. 21-22.) Instead of incorporating these findings into the RFC, however, the ALJ instead limited Lichtsinn to "unskilled simple,

repetitive tasks". (Tr. 22.) In doing so, the ALJ directly relied upon the opinion of the state agency psychiatrist, Dr. Kladder, who specifically opined that the "[l]imitations established would not preclude the ability to perform simple, unskilled work on a sustained basis." (Tr. 352) (emphasis in original).

Accordingly, this is not a case, as Lichtsinn would have it, where the ALJ disregarded his findings in crafting the RFC. Rather, the ALJ adopted *verbatim* the findings of Dr. Kladder, who translated his own findings into an RFC assessment. In such a case, the ALJ may reasonably rely on that opinion in formulating his RFC. *See Johansen*, 314 F.3d at 289; *Howard*, 255 F.3d at 581-82; *Smith*, 307 F.3d at 379; *O'Connor-Spinner*, 2007 WL 4556741, at *7; *Kusilek,* 2005 WL 56716, at *4. The ALJ's decision, therefore, is based on substantial evidence, *Schmidt*, 395 F.3d at 744, and will not be overturned. *Clifford*, 227 F.3d at 869.

### E. The ALJ Did Not Err in Considering Lichtsinn's Treatment Non-Compliance

Finally, Lichtsinn argues that the ALJ committed error when he failed to consider the possibility that her mental impairments may prevent her from taking her prescribed medicines or otherwise submit to treatment. Lichtsinn's last argument is similarly unpersuasive and the ALJ's decision will not be overturned.

Lichtsinn claims that "[m]ental illness in general and bipolar disorder in particular . . . may prevent the sufferer from taking his or her prescribed medicines or otherwise submitting to treatment." (Br. 21.) The claimant's undeveloped argument that the ALJ did not take account of her possible mental limitations in crafting his decision is unpersuasive. The ALJ presented an extremely thorough *eight page* discussion of Lichtsinn's medical history, chronicling her visits to numerous doctors and detailing her symptoms at length. Although the ALJ did frequently note her failure to comply with treatment, he hardly ignored or downplayed the severity of her

possible mental conditions. He consistently noted her paranoia, delusions, and hallucinations. (Tr. 28-33.) Indeed, the ALJ ultimately found that by June 1, 2005, Lichtsinn's condition had degenerated to the point where she was in fact disabled.

Rather, the ALJ routinely drew the reasonable inference that it was her extensive substance abuse and not any independent mental illness that was the cause of her treatment noncompliance and decompensation. For example, "[i]t was reported that the claimant's overall psychiatric history was strongly suggestive of drug and alcohol problems, which usually brought on psychotic reactions." (Tr. 27.) Similarly, "Dr. Lambertson . . . reported in June 2005 that it was his medical opinion that one of the reasons the claimant had not really improved on medication at that time was due to enough brain damage caused by all the substances she had taken over time." (Tr. 31.)

In sum, the Court will not consider Lichtsinn's plea to re-weigh the evidence in the hope that a new ALJ will view it in her favor. *See Flener ex rel. Flener v. Barnhart*, 361 F.3d 442, 447 (7th Cir. 2004). Since the ALJ's reasonable determination is grounded in the record and he articulated his analysis of the evidence to "at least a minimum level," *Ray v. Bowen*, 843 F.2d 998, 1002 (7th Cir. 1988), his determination will be upheld since it is not "patently wrong." *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000).

## V. CONCLUSION

For the reasons articulated herein, the decision of the Commissioner is AFFIRMED.  The Clerk is directed to enter judgment in favor of the Commissioner and against Lichtsinn.

SO ORDERED.

Enter for January 29, 2010.

S/Roger B. Cosbey
Roger B. Cosbey,
United States Magistrate Judge